HARLIE DANFORTH & another *vs.* THADDEUS W. CHANDLER.

Plymouth. November 11, 1920. — March 3, 1921.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Contract,* Construction, Performance and breach. *Equity Jurisdiction,* Specific performance of contract. *Agency,* Scope of authority. *Equity Pleading and Practice,* Master's report, Appeal. *Frauds, Statute of. Sale,* Of real estate: memorandum.

Upon an appeal by the plaintiff from a decree dismissing a bill in equity for the specific performance of an alleged agreement by the defendant to sell and convey to the plaintiff a forty acre farm in Pembroke, it appeared that a master had found that the defendant owned such a farm and that he had listed it with a firm of real estate agents "as a forty acre farm" and that the agents "as his agents were authorized to advertise for sale a farm of this area;" that the plaintiff answered an advertisement which stated that the farm consisted "of about forty acres, fifteen acres tillage and twenty-five in pasture and wood;" that the plaintiff with an employee of the agent and the defendant inspected the farm, which the plaintiff thought comprised a forty acre farm, and the defendant refrained from indicating in any way that the acreage to be sold was less than that stated in the advertisement although, as subsequently appeared, he intended to retain nineteen acres; that the plaintiff then made a deposit to bind the bargain, for which the agents gave a receipt reciting that it was received as a "Deposit on property of . . . [the defendant] . . . West Elm Street, Pembroke," with a recital of the price and other terms of sale; that the plaintiff took possession and made considerable outlay for repairs and improvements; that at the time fixed for passing papers the defendant tendered a deed for only twenty-five acres of the farm, which the plaintiff refused to accept. The defendant owned no other land in Pembroke than the forty acre farm. There was nothing in the record to show that the plaintiff and the agent, who acted in good faith, had any other understanding than that a forty acre farm was being sold. The master ruled that, because the memorandum of sale did "not state it was all the property of" the defendant "on said West Elm Street," it could not be enforced, and added "Even if it had so stated, I should have to find, as I have in fact done, that" the plaintiff had "failed to satisfy me that" the agents "were authorized by the defendant to give a binder covering the land in dispute." *Held,* that

(1) The memorandum, read in the light of the facts found by the master, should be construed as though it stated that the defendant was selling all his land in Pembroke;

(2) The ruling of the master that the memorandum could not be enforced because it did not state that the land sold was all the defendant's property "on said West Elm Street" was wrong;

(3) The statement of the master that the plaintiff had failed to satisfy him that the agents "were authorized by the defendant to give a binder covering the land in dispute," if treated as a conclusion of fact, was repugnant to his

finding as to the authority given to the agents, and must be disregarded; and if treated as a ruling of law, was wrong;

(4) The defendant was bound by the ostensible power given to the agents as recited by the master, and therefore the agents had power to agree to sell the entire forty acre farm;

(5) A decree should be entered directing the defendant specifically to perform the contract to sell the entire forty acre farm.

BILL IN EQUITY, filed in the Superior Court on November 20, 1918, seeking specific performance of an alleged agreement by the defendant to sell to the plaintiffs a forty acre farm in Pembroke.

In the Superior Court the suit was referred to a master. Material findings of the master are described in the opinion. The plaintiffs filed exceptions to the report, which were founded upon the following objections:

"1. For the reason that the master has found that he is not satisfied that the defendant agreed to sell to the plaintiffs the real estate described in the bill of complaint.

"2. For the reason that the master found that the northerly boundary line of the proposed purchase and sale was not clearly agreed upon by the parties.

"3. For the reason that the master finds that the receipt . . . [described in the opinion] . . . did not constitute a sufficient memoranda in writing to bind the defendant to sell the real estate described in the bill of complaint.

"4. For the reason that the master finds that Charles G. Clapp Company were not authorized by the defendant to give a binder covering the land in question.

"5. For the reason that the master finds that the receipt . . . together with the typewritten slip headed 'Forty Acre Pembroke Farm,' together do not furnish sufficient memoranda to bind the defendant to sell the real estate described in the bill of complaint.

"6. For the reason that the master finds that aside from the sufficiency of the memoranda in writing there was not sufficient part performance and change of position by the plaintiffs to warrant a decree for specific performance."

Upon a hearing by *Bishop*, J., an interlocutory decree, overruling the plaintiffs' exceptions and confirming the report, and a final decree dismissing the bill were entered; and the plaintiffs appealed.

The case was submitted on briefs.

*F. J. Geogan,* for the plaintiffs.

*M. Collingwood,* for the defendant.

BRALEY, J. The bill seeks specific performance of an alleged contract of the defendant to sell to the plaintiffs his farm of six contiguous parcels of land comprising about forty acres, with the buildings, situate in Pembroke, on the east side of West Elm Street. It appears that Charles G. Clapp Company were a firm of "real estate agents," and the master finds specifically "that the defendant listed his farm with the Charles G. Clapp Company as a forty acre farm and that the Clapp Company as his agents were authorized to advertize for sale a farm of this area." The plaintiffs in response to an advertisement of the agents wrote for further information, and received a typewritten slip headed "Forty Acre Pembroke Farm," which gave a full description of the buildings and also stated that the land consisted "of about forty acres, fifteen acres tillage and twenty-five in pasture and wood," with the price and the amount of the initial payment which "would probably be accepted." The plaintiffs accompanied by an employee of the agents inspected the premises, which they believed and understood comprised a "forty acre farm," and the defendant though present refrained from indicating in any way that the acreage to be sold was less than that stated in the advertisement, while as shown by subsequent events he intended to retain nineteen acres. See *Stewart* v. *Joyce,* 201 Mass. 301, 310. It is settled that having authorized the brokers to advertise and negotiate the sale of a "forty acre farm" the defendant is bound by their representations, and when the memorandum of sale was subsequently made there is nothing in the record to show that the brokers and the plaintiffs who each acted in good faith had any different understanding. *Lerned* v. *Johns,* 9 Allen, 419. The plaintiffs on their return to the office of the brokers closed the bargain. A "binder" of $100 was paid and a receipt given signed by the brokers which recited that the money was received as a "Deposit on property of Thaddeus W. Chandler, West Elm street, Pembroke," the total price being $3,000 of which $500 was to be paid in cash when the papers were passed, and the balance of the purchase price "was to be made up by first and second mortgages 'to be placed.'" The plaintiffs accordingly

paid this amount, and took possession of the premises where they expended considerable money in necessary repairs and some improvements. But when they were at the office of the brokers to pass the papers, and discovered on inspection of the title deed which was tendered that only twenty-one acres had been conveyed, the plaintiffs "declined to accept the same or to go any further with the transaction, claiming that they had bargained for a farm of forty acres and that they were entitled to the same." The answer denies that Charles G. Clapp Company were authorized to sign the memorandum a copy of which is annexed to the bill, "or that the real estate to be sold contained forty acres of land, or that he authorized Charles G. Clapp and Company to sell all the land that the defendant owned on the easterly side of Elm Street, Pembroke." It was unnecessary that the memorandum should state that the property to be conveyed meant "all the property of said Chandler on said West Elm Street." It is undisputed that the defendant's title deed shows a purchase of the six parcels as an entire tract which constituted about forty acres and that he owned no other land in Pembroke. A farm of forty acres was advertised for sale. It was bought as a farm of forty acres by the plaintiffs, and it was all the land the defendant owned. The memorandum, the sufficiency of which in form to satisfy the statute of frauds cannot be questioned, and by which the defendant is bound, described the premises as property of the defendant "West Elm Street, Pembroke." R. L. c. 74, § 1, cl. 4. *McGovern* v. *Hern*, 153 Mass. 308. *Tobin* v. *Larkin*, 183 Mass. 391, 392. The words of description in a deed are intended to refer to an estate owned by the grantor, and this is also the presumption in construing a contract for a future conveyance. "If the party who enters into the agreement in fact owns a parcel answering to the description, and only one such, that must be regarded as the one to which the description refers. With the aid of this presumption, the words 'a house and lot' on a street where the party who uses the language owns only one estate, are as definite and precise as the words 'my house and lot' would be; a description the sufficiency of which has been placed beyond all doubt by very numerous authorities." *Hurley* v. *Brown*, 98 Mass. 545, 547, 548. *Ryder* v. *Loomis*, 161 Mass. 161, 162, and cases cited. *Giles* v. *Swift*, 170 Mass. 461, 463. *Nickerson* v.

*Bridges,* 216 Mass. 416, 420. While the terms of the memorandum cannot be contradicted or varied, parol evidence is admissible to show what real property the defendant had, and to apply the contract to it. *Mead* v. *Parker,* 115 Mass. 413, 414, 415. *Murray* v. *Mayo,* 157 Mass. 248, 250. And when thus read the contract means the same as if it had said "all my land in Pembroke." *New England Dressed Meat & Wool Co.* v. *Standard Worsted Co.* 165 Mass. 328, 332. *Nickerson* v. *Weld,* 204 Mass. 346, 354. The ruling of the master that because the memorandum "does not state it was on all the property of said Chandler on said West Elm Street" it could not be enforced, was wrong. It is true that he immediately says, "Even if it had so stated I should have to find, as I have in effect done, that the plaintiffs have failed to satisfy me that the Charles G. Clapp Company were authorized by the defendant to give a binder covering the land in dispute." But he already had expressly found as we have previously stated "that the Clapp Company as his agents were authorized to advertise for sale a farm of this area," namely forty acres, and no question is made or can be made on his preceding findings that the agents were held out to the plaintiffs as fully authorized to sell a farm of forty acres, and bind the defendant by a memorandum of sale. *Shaw* v. *Nudd,* 8 Pick. 9. *Lobdell* v. *Baker,* 1 Met. 193. *Huntington* v. *Knox,* 7 Cush. 371. The finding that the agents were not "authorized by the defendant to give a binder covering the land in dispute" if treated as a conclusion of fact is not only repugnant to the finding just quoted, but to all the material facts which precede it, and therefore we are not bound to follow it. *Kennedy* v. *Welch,* 196 Mass. 592. *Roberts* v. *United States Trust Co.* 234 Mass. 224. *Glover* v. *Waltham Laundry Co.* 235 Mass. 330. If treated as a conclusion of law it is erroneous. The ostensible powers of an agent are his real powers, and limitations as between the principal and agent of an apparently general authority not brought to the knowledge of third persons do not affect the rights of the latter. *Sanford* v. *Orient Ins. Co.* 174 Mass. 416, 423. *Brooks* v. *Shaw,* 197 Mass. 376, 380. *Hall* v. *Bates,* 216 Mass. 140, 143. The decree dismissing the bill must be reversed, and a decree for the plaintiffs with costs is to be entered, the terms of which are to be settled in the trial court.

*Ordered accordingly.*