## CORNELIUS E. HALE *vs.* THE TEXAS COMPANY.

Suffolk.     March 12, 1928.— June 29, 1928.

Present: RUGG, C.J., BRALEY, WAIT, & SANDERSON, JJ.

*Agency*, Scope of authority.

One desiring to operate an oil company's pumps and sell its gasoline on his land negotiated concerning the price of gasoline with the company's local agent, by whom he was told that he could have the gasoline at the tank price and that at the end of the month he would be allowed a certain rebate per gallon if he sold only that company's gasoline. The landowner thereupon for a period of time bought that company's gasoline, for a portion of which he received the rebate. At the trial of an action of contract by the landowner against the company to recover the rebate on the remainder of the gasoline bought, there was evidence for the defendant that the agent had no authority to give commercial allowances, which could be given only by the defendant's superintendent. A credit memorandum bearing the approval of the superintendent on giving the plaintiff a rebate on a portion of the gasoline sold to him was introduced in evidence. The judge denied a motion by the defendant that a verdict be ordered in its favor. *Held*, that

(1) The power to fix the price of the gasoline was within the ostensible powers of the defendant's agent;

(2) Nothing appeared to show that the plaintiff had notice or knowledge of any limitation upon the agent's authority;

(3) The defendant's motion rightly was denied.

CONTRACT. Writ dated September 8, 1926.

In the Superior Court, the action was tried before *Greenhalge*, J. Material evidence is stated in the opinion. At the close of the evidence, the judge denied a motion by the defendant that a verdict be ordered in its favor and the jury returned a verdict for the plaintiff in the sum of $640. The judge thereupon reported the action for determination by this court.

*E. R. Dewing*, (*F. G. Guild* with him,) for the defendant.

*J. E. Crowley*, for the plaintiff.

WAIT, J. It is established as law in this Commonwealth that a principal is liable on a contract made in his behalf by an agent, if the agent, in making it, is acting within his ostensible powers, and the other contracting party is not aware

of limitations upon the agent's authority which are exceeded by him in the transaction.  *Brooks* v. *Shaw*, 197 Mass. 376. *American Railway Express Co.* v. *Mohawk Dairy Co.* 250 Mass. 1, 11.  The rule has been stated as follows: "The ostensible powers of an agent are his real powers, and limitations as between principal and agent of an apparently general authority not brought to the knowledge of third persons do not affect the rights of the latter."  *Danforth* v. *Chandler*, 237 Mass. 518, 522, citing *Sanford* v. *Orient Ins. Co.* 174 Mass. 416, 423, *Brooks* v. *Shaw*, *supra*, and *Hall* v. *Bates*, 216 Mass. 140, 143.  In the case before us there is no dispute that the parties dealt through an agent.  The essential questions are:  whether that agent possessed apparently general authority to bind his principal; whether in what he did he exceeded his delegated authority; whether the plaintiff had, or must be treated as having knowledge that the agent's authority was limited; and whether, even if the agent transgressed his authority, which the plaintiff knew, or should have known, was limited, the principal has not ratified his action and became bound by the contract.

The plaintiff's wife held a mortgage upon a garage and adjacent land in Walpole.  The defendant leased from the mortgagor part of the land, and installed tanks, pumps and signs for the sale of gasoline.  About November 15, 1925, upon default, the mortgagee took possession; and the plaintiff thereafter operated the garage and sold ·gasoline from the pumps.  He negotiated with one Manson, agent in Walpole for the defendant, about the purchase and the price of gasoline and was told that he could have it at the price paid by his predecessor, the tank price "and at the end of the month we give him three cents off for each gallon if he will sell only Texas gas."  Defendant's tank trucks left gasoline and measured the tanks daily, and each evening Manson called at the garage and collected the tank price per gallon. At the end of the month he allowed on the next month's gasoline three cents per gallon for what had been sold.  This allowance was given for about two months, and then Manson said he must reduce the credit to two cents per gallon.  The allowance of two cents was made for a month or two, and

then stopped.   On inquiring the cause, the plaintiff was told by Manson that "the New York office are objecting to paying rebates at present, but yours will come along in a day or two."   The plaintiff took and paid the tank price for 32,000 gallons after the rebate allowances ceased and up to August 21, 1926, when he ceased purchasing defendant's gasoline and the defendant ordered its pumps removed.   Up to that date he had sold only Texas gasoline.   He sues for $640; that is, two cents a gallon on 32,000 gallons.   He never had any written agreement with the defendant.   He made payments by checks to the order of the defendant, all of which were collected by the defendant, and many of which were returned bearing indorsements for the defendant by "W. H. Manson," or "W. H. Manson, Agt."

The defendant's superintendent for sales in New England testified that Manson's authority was limited to the sale of gasoline, the taking of orders and receiving payments for such deliveries as were made for cash; that if an employee delivering gasoline wished a commercial allowance given to an account for sale of a certain quantity, he made out a credit slip and forwarded it to the superintendent who, if he approved, indorsed and allowed it; that no one else had authority to give such allowance to the plaintiff; and that Manson never had authority to give such allowance.   A credit memorandum was put in evidence which the superintendent had approved giving a commercial allowance of two cents per gallon on 2,350 gallons "used in January before S186 dated 11/23/25 expired."   No explanation of "S186" appears in the report.   The foregoing is all the evidence reported as material.

Obviously there was controverted evidence for a jury. Enough appears to justify findings that ostensibly the agent had authority to fix the price of gasoline, and to make that price three cents or two cents a gallon less than the tank price if only Texas gasoline was sold.   Ordinarily power to sell an article in daily use with prices liable to change from day to day includes power to fix a price.   There is nothing to show the plaintiff had notice or knowledge of any limitation on the power of the agent.   The terms agreed upon were

observed without objection for several months. We see nothing in the credit memorandum to warn of lack of power in the agent. This renders it unnecessary to decide whether enough appears to sustain a finding that the defendant ratified the bargain alleged. It is essential to such ratification that the defendant should have known the circumstances, and it well may be doubted whether such knowledge could be inferred from the evidence.

It follows that the judge was right in refusing to take the case from the jury, and that judgment should enter for the plaintiff upon the verdict.

*So ordered.*